ORIGINAL

FILED
MAR 2 2 2006
U.S. COURT OF FEDERAL CLAIMS

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMERICAN CONTRACTORS INDEMNITY COMPANY, | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | FILE NO. 06-226 C |
| UNITED STATE GOVERNMENT, DEPARTMENT OF TRANSPORTATION, | ) | |
| Defendant | ) | |

**COMPLAINT**

American Contractors Indemnity Company ("ACIC" or "Plaintiff") files this Complaint against the United States Government, Department of Transportation ("DOT" or "Defendant") and in support shows this Court as follows:

**PARTIES AND JURISDICTION**

1.

Plaintiff is a company created under the laws of California with is principal place of business in California. Plaintiff is in the business of, among other things, issuing performance and payment contract bonds as surety for the performance of construction contracts.

2.

Defendant is an agency of the United States Government, pursuant to 49 U.S.C. § 115 *et seq.* and may be served through delivery by the Clerk of the United States Court of Federal Claims to the United States Attorney General or an agent designated by the authority of the Attorney General pursuant to RCFC Rule 4.

3.

Defendant is subject to the jurisdiction of this Court pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), which gives this Court jurisdiction over any claim against the United States founded upon express or implied contract with the United States.

**BACKGROUND**

4.

The allegations contained in Paragraphs 1 through 3 of this Complaint are hereby incorporated by reference, as if fully set forth herein.

5.

In September of 2000, DOT, by and through its Office of Small and Disadvantaged Business Utilization, and ACIC entered into a written agreement wherein ACIC agreed to underwrite bid, performance and payment bonds, and provide bonds on transportation-related contracts, in certain designated areas of the country, for certain certified, small, disadvantaged business enterprises ("DBE") that otherwise would have difficulty obtaining bonding ("Guaranty Contract"). A true and accurate copy of the Guaranty Contract is attached to this Complaint as Exhibit A and incorporated to this Complaint by reference in its entirety.

6.

The DOT's purpose for contracting with ACIC is recited in Section 1 of the Guaranty Contract and states as follows:

> The principal purpose of this Agreement between the U.S. Department of Transportation (DOT), Office of Small and Disadvantaged Business Utilization (OSDBU) and American Contractor Indemnity Company (ACIC) is to assist OSDBU to enhance and further the opportunity of small, disadvantaged business enterprises (DBEs), including women-oriented businesses to obtain bid, performance and payment bonds up to $1 million which such small firms need in order to obtain transportation-related contracts and which may be difficult initially to obtain without government assistance.

7.

Pursuant to Section 5(d) of the Guaranty Contract, "DOT shall reimburse ACIC 80 percent of all losses on transportation-related contracts up to $1,000,000 or less issued to certified DBE's under this Agreement."

8.

Pursuant to Section 3(c) of the Guaranty Contract, "[t]he term 'loss' means all amounts paid pursuant to claims under bonds issued in accordance with this Agreement including expenses, court costs, counsel fees and other costs related thereto."

9.

In partial consideration for, and in reliance upon the Guaranty Contract, ACIC executed the following surety bonds:

| PROJECT NAME | PRINCIPAL | OBLIGEE | BOND NO. |
|---|---|---|---|
| | | | |
| Subcontract No. K2002-02-16, Landscaping & Sodding, Broward County North Homeless Assistance Center | M&J Landscaping Services, Inc. | Dipompeo Construction Corp | 123107 |
| Project No. 01-14-CP4 Runway 6-24 Electrical Vault | Kelley Contracting, Inc. | Birmingham Airport Authority | 168217 |
| Freeman Park Multi-Purpose Pooling Building | Kelley Contracting, Inc. | City of Tuscaloosa, Alabama | 123494 |
| FL OSDBU Project No. 40708037201 Rework Utility Strips | Bennett Highway Maintenance Co. | Florida DOT | 123490 |

| PROJECT NAME | PRINCIPAL | OBLIGEE | BOND NO. |
|---|---|---|---|
| | | | |
| Florida OSDBU Project No. 40973215201, Drainage Improvements on SR 82 | Impact Construction Co., Inc. | Florida DOT | 168247 |
| Project No. DACA21-02-C-0019 for River Road improvements Rouch grade of berms & paving | Mar-Tech Land Developers, Inc. | Hugh O'Kane Electric | 168229 |

10.

Claims have been asserted on all of the bonds identified in Paragraph 8 and ACIC has incurred substantial losses on these claims.

11.

Despite numerous demands, the Defendant has failed and refused to reimburse ACIC the agreed upon 80 percent of the losses.

**COUNT I – BREACH OF CONTRACT : BOND NO. 123107**

12.

The allegations contained in Paragraphs 1 through 11 of this Complaint are hereby incorporated by reference, as if fully set forth herein.

13.

All conditions precedent to Defendant's liability to Plaintiff has been met or has occurred.

14.

In partial consideration for, and in reliance upon, Defendant's execution of the aforementioned Guaranty Contract, on May 2, 2002, ACIC executed Surety, Bond No. 123107 ("M&J Bond") in favor of Dipompeo Construction Corp. ("Obligee") on behalf of M&J Landscaping Services, as Principal covering Subcontract No. K2002-02-16, landscaping and sodding at Broward County North Homeless Assistance Center (the "Project") for $69,600.00. A true and accurate copy of the M&J Bond is attached to this Complaint as Exhibit B and incorporated to this Complaint by reference in its entirety.

15.

On or around July of 2002, five claims were made on the payment bond. These claims were investigated and settled by way of payment, totaling $38,660.60. One of the claims was settled after litigation and ACIC incurred the expenses and fees associated with litigation, totaling $23,735.86 and $1,343.97 for other expenses. The total loss incurred on the M&J Bond is $63,740.43.

16.

Since on or about December 29, 2003 and through the present, ACIC has submitted numerous requests for payment to DOT for the $50,992.34 due ACIC for the loss, with supporting documentation. DOT only has issued one payment in the amount of $20,165.28, but has failed or refused to remit payment on the remaining $30,827.06.

17.

ACIC has performed all obligations under the Guaranty Contract.

18.

Despite numerous demands, DOT has failed to remit payment to ACIC on the M&J Bond claims and is in breach of the Guaranty Contract.

19.

DOT's failure to remit payment in the amount of $30,827.06 has caused ACIC to suffer damages.

**COUNT II – BREACH OF CONTRACT : BOND NO. 168217**

20.

The allegations contained in Paragraphs 1 through 19 of this Complaint are hereby incorporated by reference, as if fully set forth herein.

21.

All conditions precedent to Defendant's liability to Plaintiff has been met or has occurred.

22.

In partial consideration for, and in reliance upon, Defendant's execution of the aforementioned Guaranty Contract, on November 15, 2002, ACIC executed Surety, Bond No. 168217 ("Kelly Bond 168217") in favor of Birmingham Airport Authority ("Obligee") on behalf of Kelley Contracting, Inc., as Principal covering Project No. 01-14-CP4, Runway 6-24, Electrical Vault (the "Project") for $894,876.00. A true and accurate copy of the Kelly Bond 168217 is attached to this Complaint as Exhibit C and incorporated to this Complaint by reference in its entirety.

23.

On or around July of 2004, before completion of the Project, a dispute arose between the Principal and the Obligee. The Obligee terminated the Principal from the contract and asserted a claim on the performance bond. Shortly thereafter, subcontractors and suppliers asserted claims on the payment bond.

24.

ACIC hired counsel to investigate these claims, as the Principal and the Obligee had each retained counsel. The claims on the payment bond by the subcontractors and suppliers were investigated and resolved by way of payment, totaling $123,454.51.

25.

Through its attorneys, Obligee asserted a monetary claim on the performance bond in the amount of $494,309.41. The claim was investigated and denied as invalid. Thereafter, Obligee filed suit seeking to recover on the performance bond and asserted a claim of bad faith and is seeking to recover compensatory and punitive damages. The case is still pending. As of December 30, 2005, $37,494.77 has been incurred in attorney fees and costs of litigation.

26.

The total loss paid out on the claim's to date, is $160,949.28. In August of 2004, ACIC recovered the remaining paid contract funds that were in the fund control account in the amount of $384.21. Therefore, the total loss incurred on Kelly Bond 168217, to date, not including attorney fees incurred since December 30, 2005, is $160, 565.07.

27.

Since on or about November 19, 2004 and through the present, ACIC has submitted numerous requests for payment to DOT on the $128,452.06 due ACIC for the loss, with supporting documentation. DOT has failed or refused to remit payment.

28.

ACIC has performed all obligations under the Guaranty Contract.

29.

Despite numerous demands, DOT has failed to remit payment to ACIC on the Kelly Bond 168217 claims and is in breach of the Guaranty Contract.

30.

DOT's failure to remit payment of $128,452.06 has caused ACIC to suffer damages, plus ACIC faces exposure for the performance bond claim in an amount yet to be determined.

**COUNT III – BREACH OF CONTRACT : BOND NO. 123494**

31.

Paragraphs 1 through 30 of this Complaint are incorporated herein as if restated in their entirety.

32.

All conditions precedent to Defendant's liability to Plaintiff has been met or has occurred.

33.

In partial consideration for, and in reliance upon, Defendant's execution of the aforementioned Guaranty Contract, June 21, 2002, ACIC executed Surety, Bond No. 123494 ("Kelly Bond 123494") in favor of the City of Tuscaloosa, Alabama ("Obligee") on behalf of Kelley Contracting, Inc., as Principal covering Freeman Park Multi-Purpose Pool Building (the "Project") for $475,620.00. A true and accurate copy of the Kelly Bond 123494 is attached to this Complaint as Exhibit D and incorporated to this Complaint by reference in its entirety.

34.

On or about July of 2003, three claims were made on the payment bond. These claims were investigated and resolved by way of payment, totaling $24,422.56.

35.

On or about July of 2003, ACIC, Obligee advised ACIC that it had declared Principal in default, had terminated the bonded contract, and would complete the remaining work through another contractor. Principal sued the Obligee for breach of contract and Obligee cross-claimed against Principal and ACIC seeking to recover approximately $70,000.00 from the performance bond for the alleged cost to complete the Project and for liquidated damages, attorney fees, costs and interest. The performance bond claim of the obligee has since been settled for the agreed payment of $25,000.00. As of December 30, 2005, $38,588.66 has been paid by ACIC for attorney fees and costs of litigation, and the $25,000.00 settlement amount will be paid shortly.

36.

The total loss paid out on the claims, to date, is $63,011.22. The Principal made two payments totaling $10,000.00 as partial reimbursement for those payment bond losses in early 2004. Therefore, the total loss incurred by ACIC on Kelly Bond 123494, to date, not including attorney fees incurred since December 30, 2005, is $53,011.22, plus the anticipated payment for settlement of the performance bond claim in the amount of $25,000.00.

37.

Since on or about August 19, 2004 and through the present, ACIC has submitted numerous requests for payment to DOT on the $42,408.98 due ACIC for the loss, with supporting documentation. DOT has failed or refused to remit payment. ACIC will shortly submit a request for payment of the $25,000.00 performance bond claim.

38.

ACIC has performed all obligations under the Guaranty Contract.

39.

Despite numerous demands, DOT has failed to timely remit payment to ACIC on the Kelly Bond 123494 claims and is in breach of the Guaranty Contract.

40.

DOT's failure to remit payment of $42,408.98 has caused ACIC to suffer damages.

**COUNT IV – BREACH OF CONTRACT : BOND NO. 123490**

41.

The allegations contained in Paragraphs 1 through 40 of this Complaint are hereby incorporated by reference, as if fully set forth herein.

42.

All conditions precedent to Defendant's liability to Plaintiff has been met or has occurred.

43.

In partial consideration for, and in reliance upon, Defendant's execution of the aforementioned Guaranty Contract, on June 19, 2002, ACIC executed Surety, Bond No. 123490 ("Bennett Bond") in favor of the Florida Department of Transportation ("Obligee") on behalf of Bennett Highway Maintenance Co., as Principal covering FL DOT Project No. 40708037201 to rework utility strips (the "Project") for $41,806.95. A true and accurate copy of the Bennett Bond is attached to this Complaint as Exhibit E and incorporated to this Complaint by reference in its entirety.

44.

On or about November of 2002, seven claims arose against the payment bond. These claims were investigated and resolved by way of payment, totaling $41,463.91. One of the claims was settled after litigation. ACIC pursued reimbursement from the Principal and the indemnitors through litigation. ACIC obtained a default judgment against the indemnitors, but the judgment was discharged in bankruptcy. ACIC incurred the expenses and fees associated with litigation, totaling $21,291.95 and $1,678.82 in related expenses.

45.

The total loss paid out on the claims is $64,434.68. On or about April of 2004, ACIC recovered remaining contract funds in the amount of $1,249.68. Therefore, the total loss incurred on the Bennett Bond is $ 63,185.00

46.

Since on or about December 29, 2003 and through the present, ACIC has submitted numerous requests for payment to DOT for payment on the $50,548.00 due ACIC for loss, with supporting documentation. To date, DOT has remitted only one payment of $33,682.83 and has failed or refused to remit payment on the remaining balance of $16,865.17.

47.

ACIC has performed all obligations under the Guaranty Contract.

48.

Despite numerous demands, DOT has failed to remit payment to ACIC on the Bennett Bond claims and is in breach of the Guaranty Contract.

49.

DOT's failure to remit payment of $16,865.17 has caused ACIC to suffer damages.

**COUNT V – BREACH OF CONTRACT : BOND NO. 168247**

50.

The allegations contained in Paragraphs 1 through 49 of this Complaint are hereby incorporated by reference, as if fully set forth herein.

51.

All conditions precedent to Defendant's liability to Plaintiff has been met or has occurred.

52.

In partial consideration for, and in reliance upon Defendant's execution of the aforementioned Guaranty Contract, on March 13, 2003, ACIC executed Surety, Bond No. 168247 ("Impact Bond") in favor of the Florida Department of Transportation ("Obligee") on behalf of Impact Construction Company, Inc., as Principal covering Project No. 40973215201, drainage improvements on SR 824 for the Florida DOT (the "Project") for $127,883.54. A true and accurate copy of the Impact Bond is attached to this Complaint as Exhibit F and incorporated to this Complaint by reference in its entirety.

53.

On or about April of 2004, three claims arose against the payment bond. These claims were investigated and two of the claims, and a portion of the third claim, were resolved by way of payment, totaling $26,483.15.

54.

Several lawsuits arose out of these claims. One of these claims was settled after litigation. One of the claimants disputed the unpaid portion of its remaining claim and filed a lawsuit seeking to recover $6,500.00, and the lawsuit is pending. ACIC also pursued reimbursement from the Principal and indemnitors in litigation. As of September 29, 2005, ACIC incurred the expenses and fees associated with litigation, totaling $6,419.48.

55.

The total losses paid out on these claims, to date, is $32,902.63. The lawsuit for indemnification was settled, with Defendant's permission for $15,000. Therefore, the total loss incurred by ACIC on Impact Bond, to date, not including attorney fees incurred since September 29, 2005, is $17,902.63.

56.

Since on or about January of 2005 and through the present, ACIC has submitted numerous requests for payment to DOT on the $14,322.10 for the loss, with supporting documentation. DOT has failed or refused to remit payment.

57.

ACIC has performed all obligations under the Guaranty Contract.

58.

Despite numerous demands, DOT has failed to remit payment to ACIC on the Impact Bond claims and is in breach of the Guaranty Contract.

59.

DOT's failure to remit payment of $14,322.10 has caused ACIC to suffer damages, plus ACIC faces exposure for the $6,500.00 payment bond claim.

**COUNT VI – BREACH OF CONTRACT : BOND NO. 168229**

60.

The allegations contained in Paragraphs 1 through 59 of this Complaint are hereby incorporated by reference, as if fully set forth herein.

61.

All conditions precedent to Defendant's liability to Plaintiff has been met or has occurred.

62.

In partial consideration for, and in reliance upon, Defendant's execution of the aforementioned Guaranty Contract, on December 20, 2002, ACIC executed Surety, Bond No. 168229 ("Mar-Tech") in favor of Hugh O'Kane Electric ("Obligee") on behalf of Mar-Tech Land Developers, Inc., as Principal covering Project No. DACA21-02-C-0019 for River Road improvements, rouch grade of berms & paving of River Road (the "Project") for $750,000.00. A true and accurate copy of the Mar-Tech Bond is attached to this Complaint as Exhibit G and incorporated to this Complaint by reference in its entirety.

63.

Principal is a subcontractor to Obligee. Obligee is a subcontractor to Eagle Electric ("Eagle"), the general contractor on an Army Corps of Engineers' project. A claim on the performance bond arose when Eagle asserted a claim against the Obligee and its performance bond claiming that Eagle took over and completed Mar-Tech's scope of work costing approximately $2,708.000.00. Mar-Tech denied that Eagle's actions were justified and asserted a claim against Eagle by way of the Obligee for approximately $1,282,000.00. This claim remains unresolved.

64.

ACIC hired a construction consultant and counsel to defend the performance bond claim and the complicated issues that surround it. As of December 30, 2005, $97,091.06 has been paid by ACIC for attorney fees and costs of litigation with additional expenses totaling $2,330.12.

65.

The total loss paid out on the claims, to date, is $116,463.96. On or about July of 2004, ACIC recovered remaining paid contract funds of $14,387.53. Therefore, the total loss incurred on the Mar-Tech Bond, to date, not including attorney fees incurred since December 30, 2005, is $102,076.43.

66.

Since on or about February of 2004 and through the present, ACIC has submitted numerous requests to DOT for payment on the $81,661.14 due ACIC for the loss, with supporting documentation. DOT has remitted only three payments totaling $39,553.32, and has failed or refused to pay the remaining balance of $42,107.82.

67.

ACIC has performed all obligations under the Guaranty Contract.

68.

Despite numerous demands, DOT has failed to remit payment to ACIC on the Mar-Tech Bond claims and is in breach of the Guaranty Contract.

69.

DOT's failure to remit payment of $42,107.82 has caused ACIC to suffer damages, plus ACIC faces exposure for the performance bond claim in an amount yet to be determined.

WHEREFORE, Plaintiff ACIC prays that judgment be entered against Defendant as follows:

1. for the recovery of the balance of the losses incurred under the M&J Bond in the amount of $30,827.06;

2. for the recovery of the balance of the losses incurred under the Kelly Bond 168217 in the amount $128,452.06, plus 80 percent of any claims paid and attorney fees or court costs incurred and other costs related to the pending lawsuit on the performance bond;

3. for the recovery of the balance of the losses incurred under the Kelly Bond 168217 in the amount $53,011.22, plus 80 percent of any claims paid, including the anticipated $25,000 for the settlement, and attorney fees or court costs incurred and other costs related to the pending lawsuit on the performance bond;

4. for the recovery of the balance of the losses incurred under the Bennett Bond in the amount of $16,865.17;

5. for the recovery of the balance of the losses incurred under the Impact Bond in the amount $14,322.10, plus 80 percent of any claims paid and attorney fees or court costs incurred and other costs related to the pending lawsuit on the payment bond;

6. for the recovery of the balance of the losses incurred under the Mar-Tech in the amount $42,107.82, plus 80 percent of any claims paid and attorney fees or court costs incurred and other costs related to the pending lawsuit on the performance bond;

7. for recovery of pre-judgment interest at the legal rate of interest until the date of judgment;

8. for recovery of post-judgment interest at the maximum rate allowed by law;

9. and for an award of any and all further relief this Court deems just and proper.

This 20th day of March, 2006.

THOMPSON, SLAGLE & HANNAN, LLC

12000 Findley Road, Ste. 250
Duluth, GA 30097
Telephone No. (770) 662-5999
Facsimile: No. (770) 447-6063

DeWitte Thompson
Georgia Bar No. 707688
Attorney for Plaintiff

# GUARANTY AGREEMENT BETWEEN THE UNITED STATES DEPARTMENT OF TRANSPORTATION (DOT) OFFICE OF SMALL AND DISADVANTAGED BUSINESS UTILIZATION AND AMERICAN CONTRACTORS INDEMNITY COMPANY

## 1. RECITAL OF PURPOSE

The principal purpose of this Agreement between the U.S. Department of Transportation (DOT), Office of Small and Disadvantaged Business Utilization (OSDBU) and American Contractors Indemnity Company (ACIC) is to assist OSDBU to enhance and further the opportunity of small, disadvantaged business enterprises (DBEs), including women-owned businesses to obtain bid, performance and payment bonds up to $1 million which such small firms need in order to obtain transportation-related contracts and which may be difficult initially to obtain without government assistance.

ACIC is one of several sureties utilized by DOT that presently underwrites DOT bonds through its standard underwriting program for DOT's Pilot Bonding Program. It is the intent of this Agreement for ACIC to continue to underwrite DOT business under this current surety structure for present and new qualifying applicants, unless written notification is provided by either party at least thirty (30) days in advance of any such changes.

ACIC, in implementing this Agreement will adopt underwriting standards and procedures generally used in evaluating contractors seeking contracts and surety bonds, however, such standards shall: (1) give due consideration to government assistance afforded to small, disadvantaged businesses enterprises and (2) be applied in a manner that will broaden the range of small businesses that qualify and obtain bonds under this program, and (3) enable the contractor to eventually graduate from government assistance and obtain bonds directly with ACIC and/or with other private sector surety companies.

EXHIBIT A

2. **AUTHORITY**

DOT is authorized under Public Law 97-449, 49 U.S.C.332, January 1983, and DOT Order 1100.60, Changes 22 and 88, to develop support mechanisms, including surety and bonding programs, that will enable DBEs to take advantage of transportation-related business opportunities. ACIC, as an authorized surety is empowered by its Articles of Incorporation to accept this Agreement.

This Agreement shall not confer, create, or bestow any rights on third parties, with respect to recovery of funds, payment of claims or losses, eligibility for bonds or otherwise. All rights and obligations under this Agreement shall run only to the parties.

3. **DEFINITIONS**

a. For purposes of this Agreement, the term "Disadvantaged Business Enterprise (DBE)" is defined in 49 Code of Federal Regulations, (26).

b. For purposes of this Agreement, the term "transportation-related" contract means a contract for the maintenance, rehabilitation, restructuring, improvement or revitalization of any of the nation's modes of transportation with any public or commercial provider of transportation, any federal or state and local transportation agency, or any prime contractor or subcontractors, at any tier, of such transportation agency where funding emanates from the Department of Transportation.

c. The term "loss" means all amounts paid pursuant to claims under bonds issued in accordance with this Agreement including expenses, court costs, counsel fees and other costs related thereto.

4. **RESPONSIBILITIES**

ACIC shall notify DOT fifteen (15) work days in writing in advance of any action to replace agents and or sub agents or of its intent to make changes in the Agreement under any of the DOT Pilot Bonding Programs that are administered by ACIC. ACIC shall bill DOT for any approved expenditures and be reimbursed by wire transfer via the Automated Clearing House (ACH)

upon completion of appropriate forms to accomplish these transfers. ACIC should provide the name and address of its bank, the routing number, account number and vendor number with all requests for reimbursement.

5. **TERMS**

a. ACIC shall underwrite bid, performance and payment bonds for certified DBE's, including women businesses, having contracts and/or seeking to enter into transportation-related contracts in those designated areas of the country mutually agreed upon by DOT and ACIC. ACIC shall provide DBE's with bond-readiness reviews in order that firms can secure pre-approvals for bond lines to meet strict bidding deadlines.

b. ACIC shall underwrite bid, performance and payment bonds and provide bond-readiness when 1) small and disadvantaged businesses meet eligibility requirements and underwriting standards and 2) have difficulty obtaining such bonding assistance outside of the program identified under this Agreement. The surety has authority to issue or deny a bond to a firm under this Agreement based upon its underwriting, however it is the intent of the DOT program for the surety to search for other options for approval in conjunction with traditional underwriting standards. ACIC shall submit written summaries of its action for approval or denial by DOT.

c. ACIC shall issue bonds on transportation-related contracts up to $1 million. Provisions for aggregate bond amounts shall be determined by the surety as long as the aggregate does not exceed $1million on any one contract. ACIC must obtain an approval letter from DOT prior to opening an account for a "new, first-time" applicant. The approval can be provided by DOT orally, with a subsequent follow-up letter, when the applicant is approaching a time constraint in the bid date. All appropriate bid specifications must be transmitted to DOT for review via facsimile one (1) business day prior to DOT's verbal approval.

d. DOT shall reimburse ACIC 80 percent of all losses on transportation-related contracts up to $1,000,000 or less issued to certified DBE's under this Agreement. ACIC shall submit requests for reimbursements as well as payments to DOT for its share of recovery, within sixty (60) calendar days of the date of payment by ACIC.

e. By this Agreement, the term of the bond shall be for the period of the project start for the DBE or until final payment is made to the DBE. The DOT Bonding Assistance Program will maintain a bond reserve for a period of three (3) months following final payment or until the surety releases DOT's 80% capacity, whichever is earlier. Because of annual appropriations of funds to DOT, the responsibility for each bond issued must be terminated after twelve (12) months from the date of project completion by the DBE as certified by the obligee. In the event a claim is filed within the 12 months, but is not resolved within that 12 month period, ACIC and DOT agree to reserve funds so that the DOT may pay its 80% of losses and ACIC may pay its 20% of losses on the bond. DOT agrees that a "rider" may be attached to all bonds issued under this Agreement that restricts any claims under the bond to the 12 month period.

f. ACIC shall only issue bonds under this Program to certified DBE's, including women-owned enterprises, who have a current certification from an agency using DOT guidelines, 49 CFR Part 26. Also, firms certified by the U.S. Small Business Administration as 8(a) firms (defined by Section 8(a) of the U.S. Small Business Act) are eligible to participate in the DOT Bonding Assistance Program.

g. Performance and Payment bonds issued by ACIC pursuant to this Agreement shall not exceed a fee of (2.5) percent. The rate for bid bonds shall be no more than twenty-five (25) dollars.

h. ACIC shall use its best efforts to internally adjust all claims under any bond issued under this Agreement. ACIC shall use its best efforts to minimize the use of outside counsel and consultants. However should ACIC retain outside counsel and or consultants, ACIC shall notify DOT at the time the experts are retained and DOT may reject the use of any particular counsel or consultant by giving notice to ACIC within three (3) business days. However, all fees and expenses incurred shall be losses as set out in this Agreement. ACIC is not obligated to increase its staff or expenses to handle a particular claim or provide additional services under this Agreement. When ACIC determines that a claim should be paid, a claims summary shall be submitted to DOT for approval or rejection of payment. Each payment of claim shall be deemed approved if DOT fails to reject the claims summary within three (3) business days, unless superceded by the statutory limitations of the respective state(s) that requires a different time frame other than three (3) business days.

i. ACIC shall bill DOT only for losses incurred and paid by ACIC under bonds issued in accordance with this Agreement. Within thirty (30) days of DOT's receipt of an acceptable invoice from ACIC, supported by a statement of losses submitted by the surety, DOT shall process all paperwork with Accounting Operations Division for payment. Documentation from ACIC shall contain adequate explanation of the causes of default. ACIC shall remit to DOT 80 percent of the funds received from recoveries, indemnification, subrogation or salvage from DOT bonds on at least a quarterly basis, which will be used by DOT to defray its share of the losses. Eighty Percent (80%) of the interest earned on any recovery shall accrue to DOT.

j. ACIC shall provide a written report of monthly bond activity on all transactions conducted under this Pilot Program and transmit the statistical summary to DOT. Included in the report shall be the name of bond agent, name of firm that was issued a bond, type of bond, bond amount, and premium fee to ACIC. Also included shall be a copy of the power of attorney for each bond that is issued by ACIC, a copy of the DBE's certification letter, and the cover sheet of project detailing dollar amount and specifications for the project.

6. **SUSPENSION OF AGREEMENT**

DOT may suspend this Guaranty Agreement by giving notice of suspension to ACIC, instructing ACIC not to write or commit to write additional bonds under this Agreement.

7. **TERMINATION OF AGREEMENT**

DOT and ACIC may terminate this Guaranty Agreement for the convenience of either party and without stated cause, upon prior written notice of sixty (60) days of any party's intention to terminate. Upon termination, the Agreement shall remain in full effect with respect to bonds written or committed to prior to receipt of written notice. In no case will DOT's obligation for legal claims, such as lien waivers, warranty and maintenance periods, be extended beyond the time frame of one (1) year from the date of project completion by the DBE as certified by the obligee.

8. **PROGRAM AUDITS**

DOT's Inspector General and the Comptroller General of the United States may at all reasonable times investigate and audit in the offices of ACIC all documents, papers, books, and records

relevant to the execution and implementation of this Agreement. ACIC shall retain documents, papers, books and records involving transactions related to this Agreement for a period of three (3) years from the date of termination of the bond or any claims, except, that if litigation, dispute, exception or audit is commenced, records related thereto shall be retained until such litigation, dispute, exception or audit is resolved by the parties or until any administrative or judicial proceeding is concluded.

9. **COMPLIANCE**

As a condition of receipt of any DOT funds under this Agreement, either directly or from DBEs who receive bonds through the DOT Bonding Assistance Program, ACIC assures DOT that it will abide by the provisions of Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et seq, and DOT's implementation regulations, 49 C.F.R. 21; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 and DOT's implementing regulations, 49 C.F.R. 27; the Age Discrimination Act of 1975, 42U.S.C. 6101-7, and any Federal implementing regulations; and Section 905 of the Railroad Revitalization and Regulatory Reform Act of 1976, 45 U.S.C. 803 (recodified in 49 U.S.C. 332). ACIC also assures DOT that it will comply with all other applicable Federal laws and regulations.

10. **WRITTEN NOTICES**

All notices, approvals, reports, or other correspondence contemplated by this Agreement must be in writing and served personally or by first class mail. If given by personal service, the notice shall be effective on the date of delivery; if given by mail, the notice shall be effective upon receipt. Either party may change its mailing address by giving notice of such change. Addresses for the parties for mailing are: **American Contractors Indemnity Company, 9841 Airport Bldg. 9th Floor, Los Angeles, California 90045, and Director, Office of Small and Disadvantaged Business Utilization, 400 7th Street, SW, Room 9414, Washington, D.C. 20590**

11. **DOT REPRESENTATIVE**

The Director, Office of Small and Disadvantaged Business Utilization shall represent DOT under this Agreement and may delegate these responsibilities to the Bond Manager, DOT Surety Bond Program on written notice to ACIC.

12. ACIC REPRESENTATIVE

ACIC shall be represented by Andy T. Faust, Jr. under this Agreement and may delegate these responsibilities to any Vice President or officer of the Company.

13. ADDITIONAL INFORMATION

DOT, through the Bond Manager, will provide pertinent information to the surety and be the primary contact to assure continuity in the program, and provide training and orientation to ACIC's agents for DOT's Pilot Bonding Program.

14. ENTIRE AGREEMENT

This document embodies the entire Agreement between the U.S. DOT, Office of Small and Disadvantaged Business Utilization and ACIC. This Agreement may be amended, altered, or any of its provisions waived only in writing and signed by both parties.

This Agreement is entered into this _____ day of September, 2000, by the United States Department of Transportation at Washington, District of Columbia.

By: ______________________

Title: Director, Office of Small and Disadvantaged Business Utilization

The above Agreement is accepted and its conditions agreed to this _____ day of September, 2000 at Los Angeles, California.

By: AMERICAN CONTRACTORS INDEMNITY COMPANY

By: ______________________
Andy T. Faust, Jr., President

Arc. DOC. ± Project #H-1-00-016-CF ct200-02

# SUBCONTRACT PAYMENT BOND

BOND NO. 123107

*KNOW ALL MEN BY THESE PRESENTS: that* M&J Landscaping Services 1738 N.W. 29th Lane, Ft.Lauderdale, FL 33311 *as Principal (hereinafter call the "Principal"), and* American Contractors Indemnity Company [illegible] *as Surety, (hereinafter called the "Surety"), a corporation organized and existing under the laws of the State of* California *are held and firmly bound unto* DiPompeo Construction Corporation *a corporation, organized and existing under the laws of the State of* Florida *with principal offices located at* 2301 N.W. 33rd Court, #103 Pompano Beach, FL 33069 *hereinafter called the "Obligee", in the sum of* Sixty-Nine Thousand Six Hundred---*DOLLARS* ($69,600.00**)*, for the payment of which sum will and truly to be made, the said Principal and Surety bind themselves and their respective heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents.*

*WHEREAS, the Obligee has been awarded a contract (hereinafter called the "Prime Contract"), by* Broward County Board of County Commissioners *for the construction* North Homeless Assistance Center

*WHEREAS, the Principal has entered into a written Subcontract with the Obligee, dated* 3/18/02 *to perform, as Subcontractor, certain portions of the work in connection with said Prime Contract, consisting generally of* Specification Section - 02932 Landscaping & Specification Section - 02485 Sodding *which Subcontract is hereby referred to and made a part hereof.*

*NOW THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said subcontractor and any and all modifications of said subcontract that may hereafter be made, and shall indemnify and save harmless the Obligee herein of and from all, damage, and expense including interest, costs and attorney's fees, which the said Obligee may sustain by reason of the Principal's failure to do so, then this obligation shall be null and void; otherwise it shall remain in full force and effect. The said Surety agrees that no change, extension of time, alteration, addition, omission, or other modification of the terms of either the said Subcontract or the said Prime Contract, or both, or in the said work to be performed, or in the specifications, or in the plans, shall in anyway affect its obligation on this Bond, and it does hereby waiver notice of any such changes, extensions of time, alterations, additions, and other modifications.*

*Principal and Surety are jointly and severally liable to the Obligee for all reasonable attorney's fees and court costs incurred concerning a dispute over this bond whether through suit, trail, appeal, mediation, arbitration, or otherwise.*

*To the extent that the Principal and the Obligee have agreed to proceed with mediation and/or arbitration of any dispute or claim, the Surety hereby agrees to participate in said mediation and/or arbitration and be bound by any award rendered by the arbitrator(s).*

*The said Principal and the said Surety agree that this Bond shall insure to the benefit of all persons supplying labor and material in the prosecution of the work provided for in said Subcontract, as well as to the Obligee, and that such persons may maintain independent actions upon this Bond in their own names. The intent of this Bond shall be to include without limitation in the terms "labor and material" that part of water, gas, power, light, heat, oil, gasoline, telephone services, or rental equipment used in the Subcontract, architectural and engineering services, required for performance of the work of the Principal, and health, welfare and fringe benefits, federal, state, and local taxes, delay and impact damages, and all other items for which either a mechanic's lien or payment bond claim may be asserted in the jurisdiction where the labor and materials were furnished.*

*IN WITNESS WHEREOF, the above bounden parties have executed this instrument under their several seals this* 2nd *day of* May *, 20* 02 *, the name and corporate seal of each corporate party being hereto affixed an these presents duly signed by its undersigned representative, pursuant to authority of its governing body.*

*(Seal)* M&J Landscaping Services
*(Principal)*
1738 N.W. 29th Lane
Ft.Lauderdale, FL 33311
*(Business Address)*

*WITNESS (or Secretary's Attest)*

______________________

*BY* ______________________
*(Signature and Title)* Jonathan Kerson
President

*(Seal)* American Contractors Indemnity Co.
*(Surety)*
9841 Airport Boulevard, 9th Floor
Los Angeles, CA 90045
*(Business Address)*

*WITNESS (or Secretary's Attest)*

______________________

*(BY)* ______________________
*(Signature and Title)* Michael B. Burton
Attorney-In-Fact

EXHIBIT
B
Blumberg No. 5208

**Birmingham International Airport**
Runway 6-24 Electrical Vault

Bond # 168217

**SECTION 00083 - PAYMENT BOND FORM**

**BIRMINGHAM AIRPORT AUTHORITY**
**BIRMINGHAM, ALABAMA**

**KNOW ALL MEN BY THESE PRESENTS** that Kelley Contracting, Inc., hereinafter called Principal, and American Contractors Indemnity Company, a corporation organized under the laws of the State of California, having its home office in the City of Los Angeles and licensed to do business in the State of Alabama, hereinafter called Surety, are held and firmly bound unto the Birmingham Airport Authority, hereinafter called Owner, for the use and benefit of Claimants as herein below defined, in the Penal Sum of Eight hundred ninety four thousand eight hundred seventy six & 00/100 Dollars ($ 894,876.00 ) for the payment of which sum well and truly to be made, Principal and Surety bind ourselves, our heirs, personal representatives, successors and assigns, jointly and severally, firmly by these presents.

**WHEREAS,** Principal has by written agreement dated November 14, 2002, entered into a Contract Agreement with Owner for **"Runway 6-24 Obstruction Removal, Construction Package No. 4, Birmingham International Airport ,"** in accordance with the Contract Documents which are incorporated herein by reference and made a part hereof, and are herein referred to as the Contract.

**WHEREAS,** Surety is authorized to do business in the State of Alabama.

**NOW, THEREFORE,** the condition of this obligation is such that if Principal shall promptly make payments to all persons, firms, Subcontractors and corporations, supplying Principal with labor, materials, or supplies, used directly or indirectly by Principal in the prosecution of the Work provided for in the Contract, then this obligation shall be void; otherwise, it shall remain in full force and effect subject, however, to the following conditions:

1. This bond is furnished for the sole purpose of complying with the requirements of Alabama Statutes.

2. It is a specific condition of this bond that a Claimant's right of action on the bond is limited to the provisions of Alabama Statutes, including, but not limited to, the one-year time limitation within which suits may be brought.

   Therefore, a Claimant, except a laborer, who is not in privity with the Contractor and who has not received payment for its labor, materials or supplies shall, within forty-five (45) Days after beginning to furnish labor, materials or supplies for the prosecution of the Work, furnish the Contractor with a notice that it intends to look to the bond for protection. A Claimant who is not in privity with the Contractor and who has not received payment for its labor, materials or supplies shall within ninety (90) Days after performance of the labor or completion of delivery of the materials or supplies, deliver to the Contractor and to the Surety written notice of the performance of the labor or delivery of the materials or supplies and of the nonpayment. No action for the labor, materials or supplies may be instituted against the Contractor or the Surety unless both notices have been given. No action shall be instituted against the Contractor or the Surety on the bond after one (1) year from the performance of the labor or completion of the delivery of the materials or supplies.

EXHIBIT
C
Blumberg No. 5208

3. The Surety's obligations hereunder shall remain in full force and effect notwithstanding (i) amendments or modifications to the Contract entered into by Owner and Principal without the Surety's knowledge or consent, (ii) waivers of compliance with or any default under the Contract granted by Owner to Principal without the Surety's knowledge or consent, (iii) the discharge of Principal from its obligations under the Contract as a result of any proceeding initiated under The Bankruptcy Code of 1978, as the same may be amended, or any similar state or federal law, or any limitation of the liability of Principal or its estate as a result of any such proceeding, or (iv) any other action taken by Owner or Principal that would, in the absence of this clause, result in the release or discharge by operation of law of the Surety from its obligations hereunder.

4. Any changes in or under the Contract Documents (which include the, Drawings and Specifications) and compliance or noncompliance with any formalities connected with the Contract or the changes therein shall affect Surety's obligations under this Bond and Surety hereby waives notice of any such changes. Further, Principal and Surety acknowledge that the Penal Sum of this Bond shall increase or decrease in accordance with the approved changes or other modifications to the Contract Documents.

**IN WITNESS WHEREOF**, the Principal and Surety have executed this instrument under their several seals on this 15 day of November, 2002, the name and corporate seal of each corporate party being hereto affixed and these presents fully signed by its undersigned representative, pursuant to authority of its governing body.

Signed, sealed and delivered
in the presence of:

Humphris Kelley
Maryann Kelley
(SEAL)

Kelley Contracting, Inc.
Principal

By: Humphris Kelley
Name and Title
Humphris Kelley, President

Signed, sealed and delivered
in the presence of:

[signature]
[signature]
(SEAL)

American Contractors Indemnity Company
Surety

By: [signature]
Name and Title
Michael H. Burton, Attorney-in-Fact

Address

(Countersignature by a Alabama Registered Agent)

Address

NOTE: If Principal or Surety are corporations, the respective corporate seals should be affixed and attached.

Attach a certified copy of Power-of-Attorney appointing individual Attorney-in-Fact for execution of Payment Bond on behalf of Surety.

**END OF SECTION 00083**

# American Contractors Indemnity Company

9841 Airport Blvd., 9th Floor, Los Angeles, California 90045

26-3151

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

That American Contractors Indemnity Company of the State of California, a California corporation does hereby appoint:

**Michael H. Burton, Linda F. Burton, Adrienne J. Laiter**

Its true and lawful Attorney(s)-in-Fact, with full authority to execute on its behalf bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, issued in the course of its business and to bind the Company thereby, in an Amount not to exceed $ 1,000,000.00 This Power of Attorney shall expire without further action on January 16, 2003.

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted by the Board of Directors of AMERICAN CONTRACTORS INDEMNITY COMPANY at a meeting duly called and held on the 6th day of December, 1990:

*"RESOLVED that the Chief Executive Officer, President or any Vice President, Executive Vice President, Secretary or Assistant Secretary, shall have the power and authority*

*1. To appoint Attorney(s)-in-Fact and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof and,*

*2. To remove, at any time, any such Attorney-in-fact and revoke the authority given.*

*RESOLVED FURTHER, that the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney or certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by facsimile signatures and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking to which it is attached.*

IN WITNESS WHEREOF, American Contractors Indemnity Company has caused its seal to be affixed hereto and executed by its President on the 1st day of September, 2000.

AMERICAN CONTRACTORS INDEMNITY COMPANY

AMERICAN CONTRACTORS INDEMNITY CO. INCORPORATED SEPT. 26, 1990 CALIFORNIA

By: [signature]
Andy L. Faust Jr., Corporate President

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On this 1st day of September, 2000 before me personally came Andy L. Faust Jr., Corporate President of American Contractors Indemnity Company, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seal of said corporation thereto by authority of his office.

WITNESS my hand and official seal

[signature]
Deborah Reese, Notary

DEBORAH REESE
Commission # 1205480
Notary Public — California
Los Angeles County
My Comm. Expires Jan 16, 2003

I, JAMES H. FERGUSON, Corporate Secretary of American Contractors Indemnity Company, do hereby certify that the Power of Attorney and the resolution adopted by the Board of Directors of said Company as set forth above, are true and correct transcripts thereof and that neither the said Power of Attorney nor the resolution have been revoked and they are now in full force and effect.

IN WITNESS HEREOF, I have hereunto set my hand this 15th day of November 2002

Bond No. 168217

Agency No. 9206

[signature]
JAMES H. FERGUSON, Corporate Secretary

rev. POA04/20/01

**SECTION 00084 - PERFORMANCE/PAYMENT BOND CERTIFICATION FORM**

**BIRMINGHAM AIRPORT AUTHORITY**

**BIRMINGHAM, ALABAMA**

I, Mary Ann Kelley, certify that I am the Secretary of the corporation named as Principal in the foregoing Performance and Payment Bonds; that Humphris Kelley who signed the said Bonds on behalf of the Principal was then President of said corporation; that I know [his, her] signature, and [his, her] signature thereto is genuine, and that said Bonds were duly signed, sealed and attested for and in behalf of said corporation by authority of its governing body.

MaryAnnKelley
Secretary Signature

Mary Ann Kelley
Secretary Printed Name

(Corporate Seal)

Attach a Certificate of Insurance and/or Policy Binder indicating that Contractor has obtained Contractor Liability and other required insurance.

Attach a Certificate of Insurance and/or Policy Binder indicating that Contractor has obtained the required Owner Protection Liability Insurance.

**END OF SECTION 00084**

**SECTION 00085 CERTIFICATE OF OWNER'S ATTORNEY**

## CERTIFICATE OF OWNER'S ATTORNEY

I, the undersigned, M. Beth O'Neill, the duly authorized and acting legal representative of the Birmingham Airport Authority, do hereby certify as follows:

I have examined the attached Contract and Surety Bonds and the manner of execution thereof, and I am of the opinion that each of the aforesaid agreements has been duly executed by the proper parties thereto acting through their duly authorized representatives; that said representatives have full power and authority to execute said agreements on behalf of the respective parties named thereon; and that the foregoing agreements constitute valid and legally binding obligations upon the parties executing the same in accordance with terms, conditions and provisions thereof; subject to the following:

(a) Insofar as the Certificate relates to the due execution of the Contract and the Surety Bonds by the Contractor and the Surety, the due authority of the representative (s) of the Contractors or the Surety who executed the Contract of the Contractor or the Surety to execute the Contract (s) and the Surety Bonds on behalf of the Contractor or the Surety, as the case may be, and the power and authority of the Contractor and the Surety to execute the Contract and the Surety Bonds, I have relied solely on the attached opinions of counsel for the Contractor and the Surety.

(b) This certificate does not relate to the laws of any jurisdiction other than the State of Alabama.

M. Beth O'Neill
(Name and Title)

Date: Attorney

**END OF SECTION 00085**

SECTION 00086 - CERTIFICATE OF SURETY'S ATTORNEY

## CERTIFICATE OF SURETY'S ATTORNEY

Birmingham Airport Authority
Birmingham International Airport
5900 Airport Highway
Birmingham, Alabama 35212

Re: Surety Bond No. 168217 (the "Surety Bond")

Gentlemen:

I have acted as counsel for American Contractors Indemnity Company, a company/corporation organized under the laws of the State of California ("Surety"). I have examined executed or certified copies of the above-referenced Surety Bond and the certificate of incorporation, bylaws and such other pertinent corporation proceedings and documents of the Surety that I have deemed necessary in connection with the opinions hereinafter set forth.

Based on the foregoing and such other investigation as I have deemed necessary, I am of the opinion that:

1. The Surety has been duly organized and validly exists in good standing under the laws of Alabama.

2. The Surety has corporate power and authority to enter into and perform its obligation under the Surety Bonds. The execution and delivery of the Surety Bonds and the performance by the Surety of its obligation thereunder have been duly authorized by requisite corporate action and the Surety Bonds have been duly executed and delivered by the Surety. The Surety constitutes a legal, valid and binding obligation of the Surety and is enforceable against the Surety in accordance with the terms of such instrument.

The enforce ability of the obligations of the Surety under the Surety Bond may be limited by (i) bankruptcy, insolvency or other similar laws affecting the enforcement of creditors' rights and (ii) general principles of equity, regardless of whether such enforceability is considered in a proceeding at equity or at law.

Very truly yours,

(Name and Title) Michael H. Burton, Attorney-in-Fact

Address:
1820 N. University Drive
Plantation, Florida 33318

Date: November 18, 2002

END OF SECTION 00086

## SECTION 00087 - CERTIFICATE OF CONTRACTOR'S ATTORNEY

Birmingham Airport Authority
Birmingham International Airport
5900 Airport Highway
Birmingham, Alabama 35212

Re: **Runway 6-24 Obstruction Removal, Construction Package No. 4 Contract Documents (the "contract")**

Gentlemen:

I have acted as counsel for Kelley Contracting, Inc., a company/corporation organized under the laws of the State of Mississippi ("Contractor"). I have examined executed or certified copies of the above-referenced Contract and the certificate of incorporation, bylaws and such other pertinent corporation proceedings and documents of the Contractor that I have deemed necessary in connection with the opinions hereinafter set forth.

Based on the foregoing and such other investigation as I have deemed necessary, I am of the opinion that:

1. The Contractor had been duly organized and validly exists in good standing under the laws of Mississippi and is duly qualified as a foreign corporation authorized to do business in and is in good standing under the laws of Alabama.
2. The Contractor has corporate or other entity power and authority to enter into and perform its obligation under the Contract. The execution and delivery of the Contract and the performance by the Contractor of its obligation there under have been duly authorized by requisite corporate or other entity action and the Contract has been duly executed and delivered by the Contractor. The Contract constitutes a legal, valid and binding obligation of the Contractor and is enforceable against the Contractor in accordance with the terms of such instrument.

The enforceability of the obligations of the Contractor under the Contract may be limited by (i) bankruptcy, insolvency or other similar laws affecting the enforcement of creditors rights and (ii) general principles of equity, regardless of whether such enforce ability is considered in a proceeding at equity or at law.

Very truly yours,

Charles Brooks

Charles Brooks, Attorney-at-law
The Brooks Firm, P. C.
2705 Fourth Avenue South
Birmingham, AL 35233

Date: 12-5-02

END OF SECTION 00087

SECTION 00082 - PERFORMANCE BOND

Bond# 168217

BIRMINGHAM AIRPORT AUTHORITY
BIRMINGHAM, ALABAMA

KNOW ALL MEN BY THESE PRESENTS that Kelley Contracting, Inc., hereinafter called Principal, and American Contractors Indemnity Company, a corporation organized under the laws of the State of California and licensed to do business in the State of Alabama, hereinafter called Surety, are held and firmly bound unto the Birmingham Airport Authority, hereinafter called Owner, in the Penal Sum of Eight Hundre ninty four thousand eight hundred seventy six and 00/100 Dollars ($ 894,876.00), for the payment of which sum well and truly made, Principal and Surety bind ourselves, our heirs, personal representatives, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated November 14, 2002, entered into a Contract Agreement with Owner for "RUNWAY 6-24 OBSTRUCTION REMOVAL, CONSTRUCTION PACKAGE No.4, Birmingham International Airport," in accordance with the Contract Documents which are incorporated herein by reference and made a part hereof, and are herein referred to as the Contract.

WHEREAS, Surety is authorized to do business in the State of Alabama.

NOW, THEREFORE, the condition of this obligation is such that if Principal:

1. Promptly and faithfully performs all of the terms, covenants and condition of the Contract including, but not limited to, its warranty provisions, in the time and manner prescribed in the Contract, and

2. Pays Owner all losses, damages (liquidated or actual, including, but not limited to, damages caused by delays in performance of the Principal), expenses, costs and attorneys' fees, including appellate proceedings, that Owner sustains resulting directly or indirectly from any breach or default by Principal under the Contract, and

3. Pays Owner all losses, damages, expenses, costs, attorneys' fees and other legal costs (including, but not limited to, those for investigative and legal support services), including those incurred in appellate proceedings, that the Owner sustains resulting directly or indirectly from conduct of the Principal including, but not limited to, want of care or skill, negligence, patent infringement, or intentionally wrongful conduct on the part of the Principal, its officers, agents, employees or any other person or entity for whom the Principal is responsible,

then this bond is void; otherwise it shall remain in full force and effect.

In the event that the Principal shall fail to perform any of the terms, covenants and conditions of the Contract during the period in which this Performance Bond is in effect, the Surety shall remain liable to the Owner for all such loss or damage (including reasonable attorneys' fees and other legal costs) resulting from any failure to perform up to the amount of the Penal Sum.

In the event that the Surety fails to fulfill its obligations under this Performance Bond, then the Surety shall also indemnify and save the Owner harmless from any and all loss, damage, cost and expense,

including reasonable attorneys' fees and other legal costs for all trial and appellate proceedings resulting directly or indirectly from the Surety's failure to fulfill its obligations hereunder. This Subsection shall survive the termination or cancellation of this Performance Bond. The obligations set forth in this Subsection shall not be limited by the Penal Sum of this Bond.

The Surety's obligations hereunder shall be direct and immediate and not conditional or contingent upon Owner's pursuit of its remedies against Principal, and shall remain in full force and effect notwithstanding (i) amendments or modifications to the Contract entered into by Owner and Principal without the Surety's knowledge or consent, (ii) waivers of compliance with or any default under the Contract granted by Owner to Principal without the Surety's knowledge or consent, (iii) the discharge of Principal from its obligations under the Contract as a result of any proceeding initiated under The Bankruptcy Code of 1978, as the same may be amended, or any similar state or federal law, or any limitation of the liability of Principal or its estate as a result of any such proceeding, or (iv) any other action taken by Owner or Principal that would, in the absence of this clause, result in the release or discharge by operation of law of the Surety from its obligations hereunder.

The Institution of suit upon this Bond is subject to not less than a two-year and not more than a three-year limitations period in accordance with current, Alabama Statutes.

Any changes in or under the Contract Documents (which include the Plans, Drawings and Specifications) and compliance or noncompliance with any formalities connected with the Contract or the changes therein shall not affect Surety's obligations under this Bond and Surety hereby waives notice of any such changes. Further, Principal and Surety acknowledge that the Penal Sum of this bond shall increase or decrease in accordance with approved changes or other modifications to the Contract Documents.

IN WITNESS WHEREOF, the Principal and Surety have executed this instrument under their several seals on this 15 day of November, 2002, the name and corporate seal of each corporate party being hereto affixed and these presents fully signed by its undersigned representative, pursuant to authority of its governing body.

Signed, sealed and delivered in the presence of:

Humphris Kelley
Maryann Kelley
(SEAL)

Kelley Contracting, Inc.
Principal

By: Humphris Kelley
Name and Title
Humphris Kelley, President

Signed, sealed and delivered in the presence of:

[signature]
[signature]
(SEAL)

American Contractors Indemnity Company
Surety

By: [signature]
Name and Title
Michael H. Burton, Attorney-in-Fact

Address

(Countersignature by a Alabama Registered Agent)

Address

NOTE: If Principal or Surety are corporations, the respective corporate seals should be affixed and attached.

Attach a certified copy of Power-of-Attorney appointing individual Attorney-in-Fact for execution of Performance Bond on behalf of Surety.

**END OF SECTION 00082**

**American Contractors Indemnity Company**

9841 Airport Blvd., 9th Floor, Los Angeles, California 90045

**26-**3151

# POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

That American Contractors Indemnity Company of the State of California, a California corporation does hereby appoint,

**Michael H. Burton, Linda F. Burton, Adrienne J. Leiter**

Its true and lawful Attorney(s)-in-Fact, with full authority to execute on its behalf bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, issued in the course of its business and to bind the Company thereby, in an Amount not to exceed $ **1,000,000.00** . This Power of Attorney shall expire without further action on January 16, 2003.

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted by the Board of Directors of AMERICAN CONTRACTORS INDEMNITY COMPANY at a meeting duly called and held on the 6th day of December, 1990.

*"RESOLVED that the Chief Executive Officer, President or any Vice President, Executive Vice President, Secretary or Assistant Secretary, shall have the power and authority*

1. *To appoint Attorney(s)-in-Fact and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof and,*
2. *To remove, at any time, any such Attorney-in-fact and revoke the authority given.*

*RESOLVED FURTHER, that the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney or certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by facsimile signatures and facsimile seal shall be valid and binding upon the* Company in the future with respect to any bond or undertaking to which it is attached."

IN WITNESS WHEREOF, American Contractors Indemnity Company has caused its seal to be affixed hereto and executed by its President on the 1st day of September, 2000.

AMERICAN CONTRACTORS INDEMNITY COMPANY INCORPORATED SEPT. 26, 1990 CALIFORNIA

AMERICAN CONTRACTORS INDEMNITY COMPANY

By: Andy Faust

Andy T. Faust, Jr., Corporate President

STATE OF CALIFORNIA §
COUNTY OF LOS ANGELES §

On this 1st day of September, 2000 before me personally came Andy T. Faust, Jr., Corporate President of American Contractors Indemnity Company, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seal of said corporation thereto by authority of his office.

WITNESS my hand and official seal

deborah reese

Deborah Reese, Notary

DEBORAH REESE
Commission # 1205480
Notary Public — California
Los Angeles County
My Comm. Expires Jan 16, 2003

I, JAMES H. FERGUSON, Corporate Secretary of American Contractors Indemnity Company, do hereby certify that the Power of Attorney and the resolution adopted by the Board of Directors of said Company as set forth above, are true and correct transcripts thereof and that neither the said Power of Attorney nor the resolution have been revoked and they are now in full force and effect.

IN WITNESS HEREOF, I have hereunto set my hand this 15th day of November , 2002 .

Bond No. 168217

Agency No. 9206

James H. Ferguson

JAMES H. FERGUSON, Corporate Secretary

rev. POA04/20/01

DOCUMENT BACKGROUND IS BLUE - ANY OTHER COLOR IS UNACCEPTABLE

6-2

# CITY OF TUSCALOOSA PUBLIC WORKS CONTRACT DOCUMENTS

EXECUTED IN FOUR COUNTERPARTS

## SECTION SIX
## PERFORMANCE BONDS
## (2002)

D.O.T.
BOND NO. 123494

**STATE OF ALABAMA )**
**TUSCALOOSA, COUNTY )**

**KNOWN ALL MEN BY THESE PRESENTS,** that we, Kelley Contracting, Inc. as principal and American Contractors Indemnity Company (hereinafter called the "Surety"), as surety, do hereby acknowledge ourselves indebted and firmly bound and held unto the City of Tuscaloosa, Alabama, (hereinafter called the "City") a municipal corporation existing under and by virtue of the laws of the State of Alabama, for the use and benefit of those entitled thereto, in the penal sum of Four Hundred Seventy-Five Thousand, Six Hundred Twenty and 00/100------DOLLARS ($475,620.00---) for the payment of which well and truly be made in lawful money of the United States, we do hereby bind ourselves, our successors and assigns and personal representatives, jointly and severally, firmly by the presents.

BUT THE CONDITION OF THE FOREGOING OBLIGATION OR BOND IS THIS:

WHEREAS, the City has entered into a certain written contract with said Contractor for the Freeman Park Multi-Purpose/Pool Building Project No. CD-2002-17 in accordance with contract documents therefore on file in the Office of the City of Tuscaloosa, Alabama at the price of, to-wit:
Four Hundred Seventy-Five Thousand, Six Hundred Twenty and 00/100-------DOLLARS ($475,620.00*******************) as more fully appears in said written contract bearing the date of 6/21/02, which contract is hereby referred to and made a part hereof to the same extent as if set out herein in full.

NOW, THEREFORE, if the Contractor shall fully and faithfully perform all the undertakings and obligations under the said agreement or contract herein before referred to and shall fully indemnify and save harmless the said City from all costs and damages whatsoever which it may suffer by reason of any failure on the part of said Contractor so to do, and shall fully reimburse and repay the said City any and all outlay and expense which it may incur in making good any such default, and shall guarantee all workmanship against defects for a period of one year, this obligation or bond shall be null and void, otherwise it shall remain in full force and effect.

And, for value received it is hereby stipulated and agreed that no change, extension of time, alteration or addition to the terms of said agreement or contract or in the work to be performed thereunder or the specifications accompanying the same shall in any wise affect the obligations of the principal or of the surety under this bond, and notice is hereby waived of any such change, extension of time, alternative of or addition to the terms of the agreement or contract or to the work or to the specifications.



EXHIBIT D

6-3

IN WITNESS WHEREOF, the said Contractor has hereunder affixed its signature and said Surety has hereunto caused to be affixed its corporate signature and seal, by its duly authorized officers on the 21st day of June, 20 02.

Kelley Contracting, Inc.
Principal

By Humphris Kelley President
Title

American Contractors Indemnity Company
Surety

ATTEST:

By

Michael H. Burton
Title Attorney-In-Fact

00

Bond No. 123490

STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION

# CONTRACT BOND

375-020-2
CONTRACTS ADMINISTRATIO
OGC - 03/C

KNOW ALL MEN BY THESE PRESENTS: That we, Bennett Highway Maintenance (BHM Company)

(Entity Name) having its principal place of business at 1935 S. Conway Rd., Suite A-5, Orlando, Florida 32812 (Bidding Office Street Address, City, State, Zip and Phone #) (hereinafter called Principal or Contractor) and American Contractors Ind. hereinafter called Surety), duly authorized to do business in the State of Florida, pursuant to the laws of the State of Florida, having its principal place of business at 9841 Airport Blvd., Los Angeles, CA 90045 (Home Office City, State, Zip) are held and firmly bound unto the State of Florida, in the full and just sum of Forty One Thousand Eight Hundred and Six Dollars and Ninety Five Cents DOLLARS ($41,806.95), lawful money of the United States of America, to be paid to the Florida Department of Transportation, to which payment will and truly be made we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally and firmly by these presents; WHEREAS, the above-bound Principal has subscribed to a contract with the State of Florida Department of Transportation (hereinafter called the Department), to bear the date of ______, ______, for constructing or otherwise improving a road(s), bridge(s), and building(s) Work consists of reworking utility Strips/medians on various State Roads

in Lake, Orange, Sumter County(ies), particularly known as Federal Aid Project No(s).:

Financial Project No(s).: 40708037201 Contract No. E-5G61,

(hereinafter called the Contract), upon certain terms and conditions in the Contract more particularly mentioned; and WHEREAS, it was one of the conditions of the award of the Department pursuant to which said Contract was entered into that these presents shall be executed; NOW, THEREFORE, the conditions of this obligation are such that if the above bound Principal shall in all respects comply with Sections 255.05 and 337.18, Florida Statutes, and shall promptly, faithfully, and fully perform the Contract according to plans and specifications as therein referred to and made a part thereof, and such alterations as may be made in said plans and specifications as provided for therein, and within the time period specified, and further, shall remedy any errors in partial or final estimates and any defects which may exist, appear, occur or result in or from said work within a period of two (2) years from the date of final acceptance of the work under such Contract, and further if such Contractor shall promptly make payment to all persons supplying labor, material, equipment, and supplies, and all persons defined in Section 713.01, Florida Statutes, whose claims derive directly or indirectly from the prosecution of the work provided for in said Contract, and promptly shall pay all State Workers' Compensation and Unemployment Compensation taxes incurred in the performance of the Contract, and shall be liable to the State in a civil action instituted by the Department or any officer of the State authorized in such cases for double any amount in money or property the State may lose or be overcharged or otherwise defrauded of, by reason of any wrongful or criminal act, if any, of the Contractor, its agents, and employees, and should the Contractor be declared to be in default under the Contract the Surety shall be obligated to pay the Department all liquidated damages assessed against the Contractor because of the default which were not withheld from Contract proceeds and the Department may at its sole option demand that the Surety take over the project and provide further that should the Department elect to have the Surety to take over the project, then in such event, the Surety may not select the Contractor or any affiliate of the Contractor to complete the project for and on behalf of the Surety without the Department's express consent. If the subject Contract required contractor qualification, under Section 337.14, Florida Statutes, or otherwise, the Surety must use a qualified contractor, who is approved by the Department, to perform the work. It is further covenanted and agreed that any alterations or additions made under this contract or in the work to be performed therein or the granting of any extension of time for the performance of the Contract or any other forbearance by or on the part of either the Department or the Principal shall not in any way release the Principal and the Surety or either of them, their respective heirs, executors, administrators, successors, or assigns, from any liability hereunder. Notice to the Surety of such alterations, extension, or forbearance is hereby specifically waived. This obligation shall remain in full force and effect until the full performance of all covenants, terms, and conditions herein stipulated.

WITNESS the signature of the principal (Contractor) and the signature of the Surety by ______ Michael H. Burton its Attorney-in-Fact (Agent or Attorney-in-Fact) with the seals of the Principal and Surety hereunto affixed this 19th day of June, 2002.

Complete the following as appropriate

Entity Name: Bennett Highway Maintenance (BHM Company) (Seal)

Authorized Signature: ______ Name & Title (Print): ______

*Signature: ______ Name & Title (Print): ______

*In the event of a Partnership both signature and printed name of 2 partners must be affixed.

Organized and existing under the laws of the State of ______ and authorized to do business in the State of Florida, pursuant to the laws of the State of Florida.

Countersigned: ______
Florida Resident Agent

Print information below (Florida Resident Agent ONLY; whether in Attorney-in-Fact or Countersignature role):

Name: Michael H. Burton
Business Address: 1820 No. University Drive Plantation, FL 33322
Telephone: (954) 423-3211

American Contractors Indemnity Company
Surety Company Name (Print) (Seal)

By: ______
Attorney-in-Fact (Surety)

☐ Above Signatory is also Florida Resident Agent (check if applicable and complete business name, address and telephone number block; if not, have such an agent countersign and complete block)

NOTE: Power of Attorney showing authority of Surety's Agent or Attorney-in-Fact is to be attached.

Contractor shall record this bond in the official records of the Clerk of Court of the county where the improvement is located prior to commencing the work in accordance with Section 255.05 ... Florida Statutes.

Send "Notices to Owner" to: Florida Department of Transportation, District 5, Construction Engineer, 719 South Woodland ... 32720-6834, Phone # (904) 943-5000

EXHIBIT E

STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION

375-020-30
CONTRACTS ADMINISTRATION
OGC - 07/01

## CONTRACT AFFIDAVIT

STATE OF Florida

COUNTY OF Broward

Before me, the undersigned authority, personally appeared Michael H. Burton (Attorney-In-Fact) who, being duly sworn, deposes and says that he/she is a duly authorized (Resident) (Nonresident) insurance agent, properly licensed under the laws of the State of Florida and the State of Florida (If applicable, otherwise N/A), to represent American Contractors Indemnity Co. (Surety Co.) of Los Angeles, CA (Home Office City and State) a company authorized to make surety bonds under the laws of the State of Florida.

Michael H. Burton (Attorney-In Fact for Surety Co.) further certifies that as Attorney-in-Fact for the said American Contractors Indemnity Company (Surety Co.) has signed the attached bond in the sum of $41,806.95 on behalf of Bennett Highway Maintenance (BHM Company) covering Financial Project No.(s) 40708037201; Contract No.(s) E-5G61; Lake, Orange, Sumter County(ies), Florida.

Said Michael H. Burton further certifies that the premium on the said bond is $1,045, which will be paid in full direct to him/her as Attorney-in-Fact, and included in his/her regular accounts to the said American Contractors Indemnity Company and that he/she will receive a regular commission of 30% per cent as Attorney-in-Fact for the execution of said bond and that the commission will not be divided with anyone except as follows:

_______ (If applicable, otherwise N/A) per cent to _______ (Florida Resident Agent or N/A, if not applicable), who is a duly authorized resident insurance agent and properly licensed under the laws of the State of Florida.

COUNTERSIGNED:

_______________________
Florida Resident Agent

_______________________
Agent or Attorney-in-Fact

### ACKNOWLEDGMENT FOR ATTORNEY-IN-FACT

Sworn to and subscribed before me this 19th day of June, 2002 by Michael H. Burton (name of affiant). He/She is personally known to me or has produced Personally Known (type of identification) as identification.

_______________________
(Notary Signature)

_______________________
(Notary's printed name) My commission expires

Notary Public State of _______________

# American Contractors Indemnity Company

9841 Airport Blvd., 9th Floor, Los Angeles, California 90045

**26-**3027

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

That American Contractors Indemnity Company of the State of California, a California corporation does hereby appoint,

**Michael H. Burton, Linda F. Burton, Adrienne J. Leiter**

Its true and lawful Attorney(s)-in-Fact, with full authority to execute on its behalf bonds, undertakings, recognizances and other contrac of indemnity and writings obligatory in the nature thereof, issued in the course of its business and to bind the Company thereby, in a Amount not to exceed $ ****1,000,000.00**** This Power of Attorney shall expire without further action o January 16, 2003.

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopte by the Board of Directors of AMERICAN CONTRACTORS INDEMNITY COMPANY at a meeting duly called and held on the 6th da of December, 1990:

*"RESOLVED, that the Chief Executive Officer, President or any Vice President, Executive Vice President, Secretary or Assistant Secretary, shall hav the power and authority*

*1. To appoint Attorney(s)-in-Fact and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof and,*

*2. To remove, at anytime, any such Attorney-in-fact and revoke the authority given.*

*RESOLVED FURTHER, that the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney or certificat relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid an binding upon the Company and any such power so executed and certified by facsimile signatures and facsimile seal shall be valid and binding upon th Company in the future with respect to any bond or undertaking to which it is attached.*

IN WITNESS WHEREOF, American Contractors Indemnity Company has caused its seal to be affixed hereto and executed by it President on the 1st day of September, 2000.

AMERICAN CONTRACTORS INDEMNITY COMPANY

AMERICAN CONTRACTORS INDEMNITY CO. INCORPORATED SEPT. 26, 1990 CALIFORNIA

By: [signature]
Andy T. Faust, Jr., Corporate President

STATE OF CALIFORNIA §
COUNTY OF LOS ANGELES §

On this 1st day of September, 2000 before me personally came Andy T. Faust, Jr., Corporate President of American Contractors Indemnity Company, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seal of said corporation thereto by authority of his office.

WITNESS my hand and official seal.

[signature]
Deborah Reese, Notary

DEBORAH REESE
Commission # 1205480
Notary Public — California
Los Angeles County
My Comm. Expires Jan 16, 2003

I, JAMES H. FERGUSON, Corporate Secretary of American Contractors Indemnity Company, do hereby certify that the Power o Attorney and the resolution adopted by the Board of Directors of said Company as set forth above, are true and correct transcripts thereo and that neither the said Power of Attorney nor the resolution have been revoked and they are now in full force and effect.

IN WITNESS HEREOF, I have hereunto set my hand this 19th day of June, 2002.

Bond No. 123490 9206

Agency No. ____

[signature]
JAMES H. FERGUSON, Corporate Secretary

STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION

575-020
CONTRACTS ADMINISTRATI
OGC - 7

# CONTRACT

This Contract, is entered into this _____ day of ____________, ________, between the State of Florida Department of Transportation, hereinafte called the Department, and Bennett Highway Maintenance (BHM Company) of 1935 S. Conway Rd., Suite A-5, Orlando, Fla. 32812 Ph:407/277-8822 Fax: 407/277-8569 ____________, herein called the Contractor.

The Contractor agrees with the Department, for the consideration herein mentioned, and at its own proper cost and expense, to do all the work an furnish all the materials, equipment, supplies and labor necessary to carry out this Contract in the manner and to the full extent as set forth in the Proposa Standard Specifications as Amended by the Specifications Package and any Supplemental Specifications Packages, and the Plans, under security as se forth in the attached bond, all of which are hereby adopted and made part of this Contract and incorporated by reference herein, and to the satisfaction c the duly authorized representatives of the Department of Transportation, who shall have at all times full opportunity to inspect the materials to be furnishe and the work to be performed under this Contract.

The Contractor shall also maintain such insurance as will protect the Department from any or all claims for property damage, personal injury and bodil injury including death, which may arise from operations under this Contract. Certificates of such insurance shall be filed with the Department and shall b subject to its approval for adequacy of protection.

It is agreed that the work to be done under this Contract is to construct or otherwise improve the road(s), bridge(s), and building(s) described as:

Work consists of reworking utility strips/medians on various State Roads

in Lake, Sumter, Orange ____________ County(ies), a distance of approximately ____________

and known as Federal Aid Project No(s).:

Financial Project No(s).: 40708037201 Contract No. E-5G61

In consideration of the foregoing premises, the Department agrees to pay the Contractor, for all items of work performed and material furnished at the uni prices and under conditions set forth in the attached proposal.

IN WITNESS WHEREOF, the Department has hereunto caused these presents to be subscribed and the Contractor has affixed its name and seal, the dat aforesaid.

STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION

By: ______________________________
Director, Highway Operations, Florida Department of Transportation

______________________________

______________________ Attorney FDOT ______ Date

District 5 General Counsel

Complete the following as appropriate

Entity Name: ______________________________ (Seal)

Authorized Signature: ____________________ Name & Title (Print): ____________________

*Signature: ____________________ Name & Title (Print): ____________________

*In the event of a Partnership both signature and printed name of 2 partners must be affixed.

______________________________
District Contracts Administrator

______________________________

Organized and existing under the laws of the State of ____________ and authorized to do business in the State of Florida, pursuant to the laws of the State of Florida.

EXECUTED IN FIVE COUNTERPARTS

STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION

375-020-27
CONTRACTS ADMINISTRATION
OGC - 03/02

# CONTRACT BOND

BOND NO. 168247

KNOW ALL MEN BY THESE PRESENTS: That we, IMPACT CONSTRUCTION COMPANY

(Entity Name) having its principal place of business at 99 NW 183RD STREET- STE 137, NORTH MIAMI BEACH, FLORIDA 33169 (Bidding Office Street Address, City, State, Zip and Phone #) (hereinafter called Principal or Contractor) and American Contractors Indemnity Co hereinafter called Surety), duly authorized to do business in the State of Florida, pursuant to the laws of the State of Florida, having its principal place of business at Los Angeles, California - 90045 (Home Office City, State, Zip) are held and firmly bound unto the State of Florida, in the full and just sum of ONE HUNDRED TWENTY SEVEN THOUSAND EIGHT HUNDRED EIGHTY THREE DOLLARS AND FIFTY FOUR CENTS DOLLARS ($127,883.54), lawful money of the United States of America, to be paid to the Florida Department of Transportation, to which payment will and truly be made we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally and firmly by these presents; **WHEREAS**, the above-bound Principal has subscribed to a contract with the State of Florida Department of Transportation (hereinafter called the Department), to bear the date of ______, ______, for constructing or otherwise improving a road(s), bridge(s), and building(s) DRAINAGE IMPROVEMENTS ON SR 824 (PEMBROKE ROAD) AT THE HILLCREST GOLF COURSE.

in BROWARD County(ies), particularly known as

Federal Aid Project No(s).

Financial Project No(s).: 40973215201 Contract No. E4D80, (hereinafter called the Contract), upon certain terms and conditions in the Contract more particularly mentioned; and **WHEREAS**, it was one of the conditions of the award of the Department pursuant to which said Contract was entered into that these presents shall be executed; **NOW, THEREFORE**, the conditions of this obligation are such that if the above bound Principal shall in all respects comply with Sections 255.05 and 337.18, Florida Statutes, and shall promptly, faithfully, and fully perform the Contract according to plans and specifications as therein referred to and made a part thereof, and such alterations as may be made in said plans and specifications as provided for therein, and within the time period specified, and further, shall remedy any errors in partial or final estimates and any defects which may exist, appear, occur or result in or from said work within a period of two (2) years from the date of final acceptance of the work under such Contract, and further if such Contractor shall promptly make payment to all persons supplying labor, material, equipment, and supplies, and all persons defined in Section 713.01, Florida Statutes, whose claims derive directly or indirectly from the prosecution of the work provided for in said Contract, and promptly shall pay all State Workers' Compensation and Unemployment Compensation taxes incurred in the performance of the Contract, and shall be liable to the State in a civil action instituted by the Department or any officer of the State authorized in such cases for double any amount in money or property the State may lose or be overcharged or otherwise defrauded of, by reason of any wrongful or criminal act, if any, of the Contractor, its agents, and employees, and should the Contractor be declared to be in default under the Contract the Surety shall be obligated to pay the Department all liquidated damages assessed against the Contractor because of the default which were not withheld from Contract proceeds and the Department may at its sole option demand that the Surety take over the project and provide further that should the Department elect to have the Surety to take over the project, then in such event, the Surety may not select the Contractor or any affiliate of the Contractor to complete the project for and on behalf of the Surety without the Department's express consent. If the subject Contract required contractor qualification, under Section 337.14, Florida Statutes, or otherwise, the Surety must use a qualified contractor, who is approved by the Department, to perform the work. It is further covenanted and agreed that any alterations or additions made under this contract or in the work to be performed therein or the granting of any extension of time for the performance of the Contract or any other forbearance by or on the part of either the Department or the Principal shall not in any way release the Principal and the Surety or either of them, their respective heirs, executors, administrators, successors, or assigns, from any liability hereunder. Notice to the Surety of such alterations, extension, or forbearance is hereby specifically waived. This obligation shall remain in full force and effect until the full performance of all covenants, terms, and conditions herein stipulated.

**WITNESS** the signature of the principal (Contractor) and the signature of the Surety by Michael H. Burton its FL Resident Agent & Attorney-In-Fact (Agent or Attorney-in-Fact) with the seals of said Principal and Surety hereunto affixed this 13th day of March, 2003.

Complete the following as appropriate

Entity Name: IMPACT CONSTRUCTION COMPANY (Seal)

Authorized Signature: ______ Name & Title (Print): NOEL E. WATSON, PRESIDENT

*Signature: ______ Name & Title (Print): ______

*In the event of a Partnership both signature and printed name of 2 partners must be affixed.

Organized and existing under the laws of the State of Florida and authorized to do business in the State of Florida, pursuant to the laws of the State of Florida.

Countersigned: ______
Florida Resident Agent

Print information below (Florida Resident Agent ONLY; whether in Attorney-in-Fact or Countersignature role):

Name: Michael H. Burton
Business Address: 1868 N. University Dr., #301 Plantation, FL 33322
Telephone: (954) 423-2311

American Contractors Indemnity Company
Surety Company Name (Print) (Seal)

By: ______
Attorney-in-Fact (Surety)

[X] Above Signatory is also Florida Resident Agent (check if applicable and complete business name, address and telephone number block; if not, have such an agent countersign and complete block)

NOTE: Power of Attorney showing authority of Surety's Agent or Attorney-in-Fact is to be attached.

Contractor shall record this bond in the official records of the Clerk of Court of the county where the improvement is located prior to commencing the work in accordance with Section 255.05(1)(a), Florida Statutes.

Send "Notices to Owner" to: Florida Department of Transportation, District 4, Construction Engineer, 3400 West Commercia[l] 33309, Phone # (954) 486-1400

EXHIBIT F

Blumberg No. 5208

STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION

375-020-30
CONTRACTS ADMINISTRATION
OGC - 07/01

## CONTRACT AFFIDAVIT

STATE OF Florida

COUNTY OF Broward

Before me, the undersigned authority, personally appeared Michael H. Burton (Attorney-in-Fact) who, being duly sworn, deposes and says that he/she is a duly authorized (Resident) XXXXXXXXXX insurance agent, properly licensed under the laws of the State of Florida and the State of Florida (If applicable, otherwise N/A), to represent American Contractors Indemnity Company (Surety Co.) of Los Angeles, California (Home Office City and State) a company authorized to make surety bonds under the laws of the State of Florida.

Michael H. Burton (Attorney-in Fact for Surety Co.) further certifies that as Attorney-in-Fact for the said American Contractors Indemnity Company (Surety Co.) has signed the attached bond in the sum of 127883.54 on behalf of IMPACT CONSTRUCTION COMPANY covering Financial Project No.(s) 40973215201 ; Contract No.(s) E4D80 ; BROWARD County(ies), Florida.

Said Michael H. Burton further certifies that the premium on the said bond is $3,300.00, which will be paid in full direct to him/her as Attorney-in-Fact, and included in his/her regular accounts to the said American Contractors Indemnity Company ______ and that he/she will receive a regular commission of 30% per cent as Attorney-in-Fact for the execution of said bond and that the commission will not be divided with anyone except as follows: -0- (If applicable, otherwise N/A) per cent to N/A (Florida Resident Agent or N/A, if not applicable), who is a duly authorized resident insurance agent and properly licensed under the laws of the State of Florida.

COUNTERSIGNED:

______________________
Florida Resident Agent

______________________
Agent or Attorney-in-Fact

**ACKNOWLEDGMENT FOR ATTORNEY-IN-FACT**

Sworn to and subscribed before me this 13th day of March, 2003 by Michael H. Burton (name of affiant). He/She is personally known to me or has produced personally known (type of identification) as identification.

______________________
(Notary Signature)

CATHERINE SIMMONS
NOTARY PUBLIC - STATE OF FLORIDA
MY COMMISSION # DD059988
EXPIRES SEPT. 24, 2005

______________________
(Notary's printed name) My commission expires

Notary Public State of ______________________

236

**American Contractors Indemnity Company**

9841 Airport Blvd., 9th Floor, Los Angeles, California 9004_

26-4217

# POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

That American Contractors Indemnity Company of the State of California, a California corporation does hereby appoint,

**Michael H. Burton, Linda F. Burton, Adrienne J. Leiter**

Its true and lawful Attorney(s)-in-Fact, with full authority to execute on its behalf bonds, undertakings, recognizances and other contracts of indemnity and writings obligatory in the nature thereof, issued in the course of its business and to bind the Company thereby, in an Amount not to exceed $ 1,000,000.00 . This Power of Attorney shall expire without further action on September 27, 2005.

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted by the Board of Directors of AMERICAN CONTRACTORS INDEMNITY COMPANY at a meeting duly called and held on the 6th day of December, 1990.

*"RESOLVED that the Chief Executive Officer, President or any Vice President, Executive Vice President, Secretary or Assistant Secretary, shall have the power and authority*

1. *To appoint Attorney(s)-in-Fact and to authorize them to execute on behalf of the Company, and attach the seal of the Company thereto, bonds and undertakings, contracts of indemnity and other writings obligatory in the nature thereof and,*
2. *To remove, at any time, any such Attorney-in-fact and revoke the authority given.*

*RESOLVED FURTHER, that the signatures of such officers and the seal of the Company may be affixed to any such Power of Attorney or certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by facsimile signatures and facsimile seal shall be valid and binding upon the* Company in the future with respect to any bond or undertaking to which it is attached."

IN WITNESS WHEREOF, American Contractors Indemnity Company has caused its seal to be affixed hereto and executed by its President on the 1st day of September, 2000.

AMERICAN CONTRACTORS INDEMNITY COMPANY INCORPORATED SEPT 26, 1990 CALIFORNIA

AMERICAN CONTRACTORS INDEMNITY COMPANY

By: Andy Faust

Andy T. Faust, Jr., Corporate President

STATE OF CALIFORNIA §
COUNTY OF LOS ANGELES §

On this 1st day of September, 2000 before me, Norma J. Virgilio, a notary public, personally appeared Andy T. Faust, Jr., Corporate President of American Contractors Indemnity Company, to me personally known to be the individual and officer described herein, and acknowledged that he executed the foregoing instrument and affixed the seal of said corporation thereto by authority of his office.

NORMA J. VIRGILIO
Commission # 1322310
Notary Public - California
Los Angeles County
My Comm. Expires Sep 27, 2005

WITNESS my hand and official seal

Norma J. Virgilio

Norma J. Virgilio, Notary

I, JAMES H. FERGUSON, Corporate Secretary of American Contractors Indemnity Company, do hereby certify that the Power of Attorney and the resolution adopted by the Board of Directors of said Company as set forth above, are true and correct transcripts thereof and that neither the said Power of Attorney nor the resolution have been revoked and they are now in full force and effect.

IN WITNESS HEREOF, I have hereunto set my hand this 13th day of March , 200 3 .

Bond No. 168247

Agency No. 9206

James H. Ferguson

JAMES H. FERGUSON, Corporate Secretary

rev. POA04/20/I

STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION

## CONTRACT

375-
CONTRACTS ADMINISTRA
OGC

This Contract, is entered into this ______ day of ____________, __________, between the State of Florida Department of Transportation, herei called the Department, and IMPACT CONSTRUCTION COMPANY of 99 NW 183RD STREET- STE 137, NORTH MIAMI BCH, FLORIDA 33189 ____________, herein called the Contractor

The Contractor agrees with the Department, for the consideration herein mentioned, and at its own proper cost and expense, to do all the work a furnish all the materials, equipment, supplies and labor necessary to carry out this Contract in the manner and to the full extent as set forth in the Propos Standard Specifications as Amended by the Specifications Package and any Supplemental Specifications Packages, and the Plans, under security as forth in the attached bond, all of which are hereby adopted and made part of this Contract and incorporated by reference herein, and to the satisfaction the duly authorized representatives of the Department of Transportation, who shall have at all times full opportunity to inspect the materials to be furnish and the work to be performed under this Contract.

The Contractor shall also maintain such insurance as will protect the Department from any or all claims for property damage, personal injury and bod injury including death, which may arise from operations under this Contract. Certificates of such insurance shall be filed with the Department and shall subject to its approval for adequacy of protection.

It is agreed that the work to be done under this Contract is to construct or otherwise improve the road(s), bridge(s), and building(s) described as: DRAINAGE IMPROVEMENTS ON SR 824 (PEMBROKE ROAD) AT THE HILLCREST GOLF COURSE.

in BROWARD County(ies), a distance of approximately ______
and known as Federal Aid Project No(s).:
Financial Project No(s).: 40973215201 - E4D80

In consideration of the foregoing premises, the Department agrees to pay the Contractor, for all items of work performed and material furnished at the unit prices and under conditions set forth in the attached proposal.

IN WITNESS WHEREOF, the Department has hereunto caused these presents to be subscribed and the Contractor has affixed its name and seal, th aforesaid.

STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION

By: ______________________________
Director, Highway Operations, Florida Department of Transportation

Complete the following as appropriate

| | | | |
|---|---|---|---|
| Entity Name: IMPACT CONSTRUCTION COMPANY | | | |
| Authorized Signature: ____________ | Name & Title (Print): | NOEL E. WATSON, PRESIDENT | (Seal) |
| *Signature: ____________ | Name & Title (Print): | ____________ | |

*In the event of a Partnership both signature and printed name of 2 partners must be affixed.

| |
|---|
| Organized and existing under the laws of the State of ____________ and authorized to do business in the State of Florida, pursuant to the laws of the State of Florida. |

1 24

THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA

BOND NO. 168229

# SUBCONTRACT PERFORMANCE BOND

Any singular reference to Principal, Surety, Obligee or other party shall be considered plural where applicable.

PRINCIPAL (SUBCONTRACTOR)
(Name and Address): Mar-Tech Land Developers
1956 Goose Creek Road
Ocean Isle, NC 28469

SURETY (Name and Address of Surety Company Office): American Contractors Indemnity
9841 Airport Blvd.
Los Angeles, CA 90045

OBLIGEE (CONTRACTOR)
(Name and Address): Hugh O'Kane Electric
3 New York Plaza
New York, NY 10004

SUBCONTRACT
Date: November 2002
Amount: $ 750,000.00
Description of Project (Name and Location): River Road Improvements (DACA21-02-C-0019) Rough Grade of Berms & Paving of River Road

BOND
Date (Not earlier than Subcontract Date): December 20, 2002
Penal Amount: $ 750,000.00

SUBCONTRACTOR AS PRINCIPAL
Company: (Corporate Seal)
Mar-Tech Land Developers, Inc.

Signature: ______________________
Name and Title:

Witness: ______________________

SURETY
Company: (Corporate Seal)
American Contractors Indemnity Company

Signature: ______________________
Name and Title: Adrienne J. Leiter - Attorney-in Fact
Attach Power of Attorney

Witness: ______________________

(Any additional signatures appear on page attached)

FOR INFORMATION ONLY
GENT or BROKER:
(Name. Address and Telephone)


©1988, The Associated Genera

EXHIBIT
G

# Articles

1. **SCOPE OF BOND.** The Principal and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Obligee for the performance of the Subcontract, which is incorporated in this bond by reference. In no event shall the Surety's total obligation exceed the penal amount of this bond.

2. **EFFECT OF OBLIGATION.** If the Principal performs the Subcontract, then this bond shall be null and void; otherwise it shall remain in full force and effect.

3. **ALTERATION NOTICE WAIVER.** The Surety hereby waives notice of any alteration or extension of the Subcontract, including but not limited to the Subcontract price and/or time, made by the Obligee. This waiver shall not apply to the time for suit provided by paragraph 5 hereunder.

4. **PRINCIPAL DEFAULT.** Whenever the Principal shall be, and is declared by the Obligee to be in default under the Subcontract, with the Obligee having performed its obligations in the Subcontract, the Surety may promptly remedy the default, or shall promptly:

   4.1 **COMPLETE SUBCONTRACT.** Complete the Subcontract in accordance with its terms and conditions; or

   4.2 **OBTAIN NEW CONTRACTORS.** Obtain a bid or bids formally, informally or negotiated for completing the Subcontract in accordance with its terms and conditions, and upon determination by the Surety of the lowest responsible bidder, or negotiated proposal, or, if the Obligee elects, upon determination by the Obligee and the Surety jointly of the lowest responsible bidder, or negotiated proposal, arrange for a contract between such party and the Obligee. The Surety will make available as work progresses sufficient funds to pay the cost of completion less the balance of the contract price. The cost of completion includes responsibilities of the Principal for correction of defective work and completion of the Subcontract; the Obligee's legal and design professional costs resulting directly from the Principal's default, and; liquidated damages or actual damages if no liquidated damages are specified in the Subcontract. The term "balance of the contract price," as used in this paragraph, shall mean the total amount payable by the Obligee to the Principal under the Subcontract and any amendments to it, less the amount properly paid by the Obligee to the principal; or

   4.3 **PAY OBLIGEE.** Determine the amount for which it is liable to the Obligee and pay the Obligee that amount as soon as practicable; or

   4.4 **DENY LIABILITY.** Deny its liability in whole or in part and notify and explain to the Obligee the reasons why the Surety believes it does not have responsibility for this liability.

5. **TIME FOR SUIT.** Any suit under this bond must be instituted before the expiration of two (2) years from the date of substantial completion as established by the contract documents.

6. **RIGHT OF ACTION.** No right of action shall accrue on this bond to or for the use of any person or entity other than the Obligee named herein, its heirs, executors, administrators or successors.



©1988, The Associated General Contractors of America

THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA

Bond No. 168229

# SUBCONTRACT PAYMENT BOND

Any singular reference to Principal, Surety, Obligee or other party shall be considered plural where applicable.

PRINCIPAL (SUBCONTRACTOR)
(Name and Address): **Mar-Tech Land Developers**
**1956 Goose Creek Road**
**Ocean Isle, NC 28469**

SURETY (Name and Address of Surety Company Office): **American Contractors Indemnity**
**9841 Airport Blvd.**
**Los Angeles, CA 90045**

OBLIGEE (CONTRACTOR)
(Name and Address): **Hugh O'Kane Electric**
**3 New York Plaza**
**New York, NY 10004**

SUBCONTRACT
Date: **November 2002**
Amount: $ **750,000.00**
Description of Project (Name and Location): **River Road Improvements (DACA21-02-C-001**
**Rough Grade of Berms & Paving of River Ro**

BOND
Date (Not earlier than Subcontract Date): **December 20, 2002**
Penal Amount: $ **750,000.00**

SUBCONTRACTOR AS PRINCIPAL
Company: (Corporate Seal)
**Mar-Tech Land Developers, Inc.**

Signature: ____________________
Name and Title:

Witness: ____________________

SURETY
Company: (Corporate Seal)
**American Contractors Indemnity Company**

Signature: ____________________
Name and Title: **Adrienne J. Leiter - Attorney-Fact**
Attach Power of Attorney

Witness: ____________________

(Any additional signatures appear on page attached)

FOR INFORMATION ONLY
AGENT or BROKER:
(Name, Address and Telephone)



©1988, The Associated General Contractors of America

# Articles

1. **SCOPE OF BOND.** The Principal and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Obligee to pay for labor, materials and equipment furnished for use in the performance of the Subcontract, which is incorporated in this bond by reference and pursuant to which this bond is issued. In no event shall the Surety's total obligation exceed the penal amount of this bond.

2. **EFFECT OF OBLIGATION.** If the Principal shall promptly make payment directly or indirectly to all Claimants as defined in this bond, for all labor, material and equipment used in the performance of the Subcontract, then this bond shall be null and void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

   2.1 **TIME FOR CLAIM.** The Principal and Surety hereby jointly and severally agree with the Obligee that every Claimant, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such Claimant's work or labor was done or performed, or materials were furnished by such Claimant, for which claim is made, may have a right of action on this bond. The Obligee shall not be liable for the payment of any costs or expenses including attorneys' fees which the Obligee may incur in connection with its defense of any such right of action.

   2.2 **RIGHT OF ACTION.** No suit or action shall be commenced on this bond by any Claimant:

   2.2.1 Unless Claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: Principal, Obligee, or the Surety above named, within ninety (90) days after such Claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Obligee or Surety, at any place within the United States where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid Project is located, however, such service need not be made by a public officer.

   2.2.2 After the expiration of one (1) year from the date (1) on which the Claimant gave the notice required by Subparagraph 2.2.1, or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone on the Project, whichever first occurs. Any limitation embodied in this bond, which is prohibited by any law controlling the Project, shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

   2.2.3 Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or any part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.

3. **CLAIMANT.** A Claimant is defined as an individual or entity having a direct contract with the Principal to furnish labor, materials or equipment for use in the performance of the Subcontract or any individual or entity having valid lien rights which may be asserted in the jurisdiction where the Project is located. The intent of this bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Subcontract, architectural and engineering services required for performance of the work of the Principal, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

4. **AMOUNT OF BOND.** The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith by the Surety.

5. **ALTERATION NOTICE WAIVER.** The Surety waives notice of any alteration or extension of the Subcontract, including but not limited to the Subcontract price and/or time, made by the Obligee. This waiver shall not apply to the time for suit provided by Paragraph 2.2 hereunder.



© 1988, The Associated General Contractors of America